**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **GARY D. WILSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:09-1021** |
| | ) | **Judge Nixon** |
| **HD SUPPLY MANAGEMENT, INC.,** | ) | **Magistrate Judge Griffin** |
| **HD SUPPLY, INC., HD SUPPLY** | ) | |
| **PLUMBING/HVAC GROUP, INC., and** | ) | **JURY DEMAND** |
| **HD SUPPLY PLUMBING/HVAC, LTD.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

Pending before the Court is the Motion for Summary Judgment (Doc. No. 32) filed by

Defendants HD Supply Management, Inc., HD Supply Plumbing/HVAC Group, Inc., HD Supply

Plumbing/HVAC, Ltd., and HD Supply, Inc. (collectively, "Defendants"), and filed with a

supporting Memorandum (Doc. No. 33) and Statement of Facts (Doc. No. 34).  Plaintiff Gary D.

Wilson ("Plaintiff") has filed a Response in Opposition (Doc. No. 45) and a Response to

Defendant's Statement of Facts (Doc. No. 44).  Plaintiff also submitted his own Statement of Facts

in Support of his Response in Opposition (Doc. No. 43).  Defendant submitted a Reply (Doc. No.

48) and a Response to Plaintiff's Statement of Facts (Doc. No. 51).

Also pending before the Court is Defendants' Motion to Strike portions of Plaintiff's

affidavit (Doc. No. 45-1) and the affidavits of Walter Exum (Doc. No. 47-1) and Tami Wilson

(Doc. No. 46-1) in their entirety.  (Doc. No. 49.)  The Motion to Strike was filed with a supporting

Memorandum (Doc. No. 50).  Plaintiff subsequently filed a Response in Opposition to the Motion

to Strike (Doc. No. 54) and his own Motion for Leave to File Affidavits of Tami Wilson and Walter Exum Out of Time (Doc. No. 55). Defendants opposed Plaintiff's Motion for Leave to File Affidavits out of time (Doc. No. 56). Plaintiff subsequently moved to file the affidavit of Walter Exum nunc pro tunc (Doc. No. 57); Defendants also opposed this motion (Doc. No. 58).

Defendants move to strike the affidavits of Tami Wilson and Walter Exum on the grounds that they were untimely filed. (Doc. No. 50 at 2.) Defendants argue that "[c]ourts regularly strike untimely affidavits and declarations[,]" pointing to the "wide latitude to impose sanctions for failure to comply with [] scheduling orders" given to district courts by Federal Rule of Civil Procedure 16. *Id.* The Court notes that, as Plaintiff argues (Doc. No. 54 at 1-3), Defendants were provided with the complete substance of the admittedly unsigned affidavits at the time the response was timely filed. Accordingly, the Court declines to strike these affidavits on the grounds stated above.

Defendants also move to strike these two affidavits on the grounds that they exceed the scope of Plaintiff's Rule 26 Disclosures. (Doc. No. 50 at 3.) They argue that Plaintiff was obliged to disclose to them "what knowledge [he] believe[d] each individual possesses" relating to the substance of the case. Plaintiff in his Initial Disclosures, identified both Tami Wilson and Walter Exum. However, with regard to Mr. Exum, Plaintiff stated only that Mr. Exum "'knows Plaintiff trained him to work Plaintiff's job[,]" and "did not state that Mr. Exum had any other knowledge, including knowledge of any conversations with Ms. Davis, knowledge about Ms. Davis's opinion of Plaintiff or knowledge about Plaintiff's ability to perform his job duties." *Id.* at 4. With regard to Mrs. Wilson, Plaintiff stated only that Mrs. Wilson "'has knowledge of the discriminatory acts taken against [Plaintiff], as well as knowledge of the mental anguish, pain and suffering, humiliation and embarrassment, injury to character and personal injury he suffered. He [sic] further

has knowledge of his lost wages and other benefits[,]'" but "did not state that Mrs. Wilson had any additional knowledge, including knowledge about Plaintiff's hiring[.]" *Id.*

Plaintiff, in response, argues first that in his discovery disclosures to Defendants, he not only identified Walter Exum and the knowledge described above, he also "identified several documents as being supporting documents," including a statement made by Walter Exum to the Equal Employment Opportunity Commission (EEOC). (Doc. No. 54 at 4.) This witness statement, made by Mr. Exum, contains the bulk of the information to which Defendants now object in Mr. Exum's affidavit, in that Mr. Exum's witness statement established that Mr. Exum stated that "they pushed [Plaintiff] out the door and gave me his job—it was crazy!" *Id.* at 8. In regard to specific statements about Mr. Exum's knowledge with regard to Jami Davis, Plaintiff argues that Defendants, in their initial disclosures, "were very vague with regard to the knowledge of Jami Davis," not indicating that Ms. Davis was purportedly the individual who hired and fired Plaintiff. *Id.* Accordingly, any failure to reveal specific statements of Mr. Exum with regard to Ms. Davis occurred because Defendants did not reveal the full involvement of Ms. Davis. *Id.* at 8-9.

Similarly, Plaintiff argues, the content of Mrs. Wilson's affidavit is not being used to support Plaintiff's claim, but rather is being used to rebut Defendant's defense (namely, the same-actor inference): "Plaintiff did not know until Plaintiff received Defendants' Motion for Summary Judgment that Defendants would even allege that because the same person who allegedly hired Plaintiff then fired Plaintiff that Plaintiff is precluded from recovery." *Id.* at 9. Plaintiff, upon making his initial disclosures, did not know, then, that Mrs. Wilson's knowledge regarding who was responsible for hiring Plaintiff would be relevant, because of Defendants' vagueness regarding Ms. Davis's role in Plaintiff's hiring and firing. *Id.*

The Court finds persuasive Plaintiff's arguments regarding why his initial disclosures were not more specific with regard to Mr. Exum's knowledge in relation to Ms. Davis. Defendants were provided with information regarding Mr. Exum's knowledge beyond merely that Plaintiff trained Mr. Exum for Plaintiff's position. Accordingly, the Court declines to find that Plaintiff's disclosures regarding Mr. Exum were inadequate under Federal Rule of Civil Procedure 26, and therefore **DENIES** Defendants' Motion to Strike as to Mr. Exum's affidavit. However, Rule 26(e) provides that a party must supplement his initial disclosures when he learns that his previous disclosure was incomplete or incorrect, and it is undisputed that Plaintiff has not done so with regard to Mrs. Wilson's knowledge as to who hired Plaintiff. Accordingly, pursuant to Federal Rule of Civil Procedure 37(c)(1), the Court hereby **GRANTS** Defendants' Motion to Strike as to Mrs. Wilson's affidavit. For the above-stated reasons, the Court hereby **GRANTS** Plaintiff's Motion for Leave to File Nunc Pro Tunc the affidavit of Mr. Exum; Plaintiff's earlier Motion for Leave to File Affidavits Out of Time is **DENIED as moot**.

Defendants have also moved to strike portions of Plaintiff's affidavit as contradictory of his sworn deposition testimony. (Doc. No. 50 at 7.) Specifically, Defendants move to strike ¶¶ 2 and 6 of Plaintiff's Affidavit (Doc. No.45-1).

In ¶ 2, Plaintiff states that he was hired by both Ms. Davis and Michael Pardue; however, Defendants argue, Plaintiff testified at his deposition "that Ms. Davis was the individual with whom he interviewed and Ms. Davis was the individual who hired him." (Doc. No. 50 at 7 (citing Doc. No. 35-2 at 7).) Plaintiff argues that, at his deposition, he "was not questioned at any length about who hired him." (Doc. No. 54 at 9.) Nor was he "questioned in his deposition about whether he knew if any other employee had input into the decision to hire him. Further, Plaintiff does not state

specifically in his affidavit who made him the offer because the offer was made to his wife by Mr.

Pardue." *Id.* at 10.

Plaintiff's deposition testimony is as follows:

Q: And after you applied through monster.com, take me through the steps that resulted in you being employed.

A: Well, I was called in for an interview.

Q: Okay.

A: I interviewed with the branch manager, Jamie [sic] Davis.

Q: Okay.

A: And then I was called back and made an offer.

Q: Who made you the offer?

A: Jamie [sic] Davis.

(Doc. No. 35-2 at 7.) Paragraph 2 of Plaintiff's Affidavit states: "In January 2006, I interviewed for

a job position at HD Supply with both Jami Davis and Michael Pardue. . . . Both Ms. Davis and Mr.

Pardue interviewed me at the same time. . . . I was told by them in this meeting that both Mr. Pardue

and Ms. Davis would decide who to hire." (Doc. No. 45-1 at ¶ 2.) The Court finds that the later

affidavit, indicating that he interviewed not only with Ms. Davis but also with Mr. Pardue (and that

he was told both of them would make hiring decisions) contradicts Plaintiff's earlier sworn

deposition testimony that he interviewed with Ms. Davis and that he was extended an offer by Ms.

Davis, and accordingly **GRANTS** Defendants' Motion to Strike ¶ 2 of Plaintiff's Affidavit. *See*

*Lewis v. Weyerhauser Co.*, 141 Fed. App'x 420, 424-25 (6th Cir. 2005); *Lanier v. Bryant*, 332 F.3d

999, 1004 (6th Cir. 2003); *U.S. ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d 296, 303 (6th

Cir. 1998).

In ¶ 6 of his Affidavit, Plaintiff states that he "was . . . trained and helped out on the will call counter about 5-6 times per week, and whenever the will call employee was not available or too busy. . . . When I worked on will call, the majority of items pulled [were] small and weighed under 25 pounds.  80% of the parts pulled were under 25 pounds.  I would have to lift both the small items and items which weighed over 25 pounds, if I could.  I would use a tow motor to pull any large order."  (Doc. No. 45-1 at ¶ 6.)  Defendants argue that this contradicts Plaintiff's deposition testimony, where he stated that "he could not and would not perform will call duties":

> Q: At HD Supply, if you were assisting on will-call and a customer came in and there was a part that needed to be loaded for the customer that was over 20 pounds, you could not do that; is that correct?
>
> A: I would not.
>
> Q: You would not do that?
>
> A: Exactly.

(Doc. No. 50 at 7-8 (citing Doc. No. 51-1 at 5; Doc. No. 35-2 at 23).)  Defendants argue that this earlier deposition testimony contradicts Plaintiff's statements in his Affidavit that he could (and did) perform all of the will call functions.  (Doc. No. 50 at 8.)  Plaintiff argues that this misrepresents his deposition testimony.  (Doc. No. 54 at 10.)  He states that he "testified that he assisted with will call duties." *Id.* (citing Doc. No. 54-7 at 3).  Plaintiff argues that the portions of the deposition to which Defendants point represent the parts of the deposition "where Plaintiff was questioned about the larger items.  While Plaintiff would not personally pick up the larger items, he would use the tow motor to do so."  (Doc. No. 54 at 10.)  Plaintiff then argues that later deposition testimony establishes that Plaintiff said that his ability to help out at will call "depended on how heavy the object may be[,]" *id.* at 11 (citing Doc. No. 54-7 at 6-7); the Court notes, however, that Plaintiff's

testimony then goes on to state that he would not lift over 20 pounds when helping out at will call since he "would get someone else to do it" (Doc. No. 54-7 at 7), not that he could lift the heavy objects required at will call if he used a tow motor, as his Affidavit states was the case.

Plaintiff was directly asked at his deposition whether he could or did perform the duties at will call if they involved lifting over 20 pounds; he repeatedly answered "No," and went on to state that he would get someone else to do that type of lifting. He did not at any point indicate that he did the lifting of items over 20 pounds while using the tow motor, but rather clearly indicated that he did not do such lifting himself, even when working at will call. The Court finds that ¶ 6 of Plaintiff's Affidavit directly contradicts his earlier sworn deposition testimony, and also **GRANTS** Defendants' Motion to Strike as to that paragraph.

For the reasons stated herein, the Court hereby **GRANTS** Defendants' Motion for Summary Judgment.

## I. BACKGROUND

### A. *Procedural History*

On October 23, 2009, Plaintiff filed a Complaint against Defendants HD Supply Management, Inc., HD Supply, Inc., and HD Supply Plumbing/HVAC Group, Inc., under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, for discrimination based on age. (Doc. No. 1.) Plaintiff alleged that he was terminated in violation of the ADEA and was not re-hired into his old position, nor was he hired into a position available at a different location because of his age. *Id.* at 4. On April 23, 2010, Plaintiff moved to amend his Complaint in order to add HD Supply Plumbing/HVAC, Ltd. as an additional party defendant. (Doc. No. 14.) The Magistrate Judge granted this motion on May 10, 2010 (Doc. No. 16), and the Amended

Complaint was filed (Doc. No. 17).  Defendants subsequently filed this Motion on September 24, 2010 (Doc. No. 32).  This Court has jurisdiction under 28 U.S.C. § 1331.

B.      *Factual History*[1]

HD Supply Plumbing/HVAC, Ltd. sells plumbing, heating, and air conditioning supplies to residential and commercial contractors; Plaintiff notes that HD Supply "eliminated the HVAC side of operations when it lost the Trane contract in December 2007."  (Doc. No. 44 at ¶ 1 (citing Doc. No. 45-1 at ¶ 10).)

Plaintiff was born on August 19, 1957.  In January of 2006, when he was 48 years old, he interviewed for a job as a counter sales associate ("CSA") at HD Supply with Jami Davis[2], the Branch Manager of the Nashville HD Supply branch at the time.  Ms. Davis offered Plaintiff the job, which he accepted.  He began work shortly thereafter, where he reported to George Woods, the Counter Supervisor.  Mr. Woods is 64 years old; Ms. Davis was also Mr. Woods's supervisor, at least from October 2006 through October 2007 (at which time she began working as Sales Manager rather than Branch Manager).

Plaintiff's job duties as a CSA included fielding calls from customers, taking phone orders from customers, checking stock, writing sales orders, ensuring that orders were pulled properly, and taking care of customers who physically came to the counter.  The sales counter was divided into two separate counters—plumbing and HVAC.  Most of the time, Plaintiff worked alone on the plumbing counter.  Occasionally, Plaintiff would also help out on the will call counter.  The will

---

[1] Unless otherwise noted, all facts in this section are undisputed and are taken from Plaintiff's Response to Defendants' Statement of Undisputed Material Facts (Doc. No. 44) or Defendants' Response to Plaintiff's Statement of Additional Material Facts (Doc. No. 51).

[2] Ms. Davis's name has since changed to Jami Ivey; however, she is referred to throughout this Order as Jami Davis.

call counter was where customer orders were pulled, staged, and shipped. The will call counter was operated by a will call associate who physically located all of the orders in the warehouse and pulled the order off the shelf. The will call associate during the last year of Plaintiff's employment was Walter Exum. Mr. Exum was 33 years old in 2007 and turned 34 on October 3, 2007. Mr. Exum pulled both plumbing and HVAC orders. The parts pulled by the will call associate ranged in size from very tiny to huge. Plaintiff contends that the majority of items pulled when he occasionally worked will call were small and weighed under 25 pounds (Doc. No. 44 at 5), and that the HVAC side had more of the large parts to pull—only thirty percent to fifty percent, per Ms. Davis's deposition testimony, of the plumbing parts would be over 25 pounds. (Doc. No. 45-5 at 6.) The will call associate, Mr. Exum, was required to use a tow motor to pull these large orders. Because Plaintiff was not tow motor certified, and because he had medical restrictions that precluded him from lifting more than 25 pounds, Plaintiff did not pull orders that exceeded 25 pounds. (Doc. No. 35-2 at 22, 23.) However, Mr. Woods testified at his deposition that Plaintiff (Doc. No. 45-4 at 20.)

Plaintiff did not get along well with Ms. Davis and felt that she was hard to work with. Plaintiff contends that Ms. Davis had conflicts with many employees, not just with Plaintiff, and that Defendants moved Ms. Davis from her Branch Manager position to a Sales Manager position because of the complaints about her by other employees. (Doc. No. 44 at 6-7 (citing Doc. No. 45-2 at 7-8, 10, Doc. No. 45-4 at 6, Doc. No. 45-7 at 2-3).) Defendants claim that Ms. Davis viewed Plaintiff as having a bad attitude and not being a team player (citing Doc. No. 35-3 at 8); Plaintiff argues that despite Defendants' existing disciplinary policy, he was never counseled, disciplined, or written up for any perceived problems with his job performance while at HD Supply (Doc. No. 45-1

at 18). He also states that Mr. Woods, Plaintiff's direct supervisor, thought Plaintiff was a great employee (Doc. No. 45-4 at 4). Plaintiff also states that "Ms. Davis was in no position to judge Plaintiff because Ms. Davis was very seldom at the counters. She would only walk through there about 2-3 times per week" (Doc. No. 44 at 10, citing Doc. No. 45-7 at 3). Plaintiff further states that "Ms. Davis didn't like Plaintiff. She would talk about him with other employees and state she was glad he was gone after he lost his job" (Doc. No. 44 at 10, citing Doc. No. 45-6 at 2-4). In her deposition, Ms. Davis stated that she felt that Plaintiff did not support his fellow team members by failing to answer the phone, failing to step in and help customers who were waiting on the HVAC counter, and failing to call the inside sales team for backup when there were long lines. (Doc. No. 35-3 at 9.) Plaintiff again points out that Ms. Davis, at the time Plaintiff lost his job, was not his supervisor as she was the sales manager and not the branch manager; he also states that if Ms. Davis had problems with his job performance, she did not follow the established disciplinary procedures in place. (Doc. No. 44 at 10.) Plaintiff also avers that Ms. Davis made the decision to fire Plaintiff before the layoffs even occurred; she approached Mr. Exum in the fall of 2007 and told him that she hoped he would replace Plaintiff at the counter. (Doc. No. 44 at 12, citing Doc. No. 57-1 at ¶ 5.)

Defendants' HVAC business in Nashville was tied to the sale of Trane brand parts. Around December of 2007, HD Supply lost its contract with Trane. Defendants state that because HD Supply did not believe that the Nashville branch could stand on its own without the Trane contract, they determined that the Nashville branch must close (Doc. No. 44 at 13, citing Doc. No. 35-7 at 7-8). Plaintiff, however, states that he was told the plumbing side would remain open (Doc. No. 45-1 at ¶ 11). Kate Beebe, Regional Human Resources Manager, Buddy Wallace, Regional Vice-President for the Southern Region, and Bill Carley, Regional Operations Manager, felt that HD

Supply could operate the Nashville branch strictly as a plumbing and showroom operation; however, to do so, HD Supply would need to reduce the number of employees in the branch to approximately eighteen.

One night in early December of 2007, at approximately 7:00 p.m., Ms. Beebe informed Ms. Davis of the impending layoff. She told Ms. Davis that the next morning, HD Supply would be announcing the layoff and that the number of employees in the branch would be reduced from approximately thirty-eight to approximately eighteen. Ms. Beebe told Ms. Davis how many employees she could keep to make the branch work, and told her to keep the employees who were best at performing multiple functions. Plaintiff strenuously denies, however, that Ms. Davis was in the position of deciding who would be laid off, as she was no longer the branch manager but rather was the outside sales manager (citing Doc. No. 45-2 at 9-11); while Ms. Davis was the outside sales manager, she had no ability to hire or fire Plaintiff, as Plaintiff never worked outside sales. Plaintiff states that Ms. Davis told him that she had no input into the decision as to who would stay and who would be laid off. (Doc. No. 45-1 at ¶ 12.) He also states that Ms. Davis began training Mr. Exum to take over Plaintiff's job duties before the layoffs began (as discussed above). Ms. Davis, per her deposition testimony, was branch manager from 2006 until October of 2007; she was Sales Manager from October of 2007 until September of 2008. (Doc. No. 45-5 at 2.) As Sales Manager, she supervised outside sales, plumbing only—approximately two or three employees. *Id.* at 3-4.

Ms. Davis stated in her deposition that the decision about who to lay off was split "50/50" between herself and Ms. Beebe. (Doc. No. 35-3 at 16.) Ms. Beebe stated in her deposition that Ms. Davis and Glenn Bullington (the assistant manager of the branch) made the decision about who to

let go in the initial round of layoffs.  (Doc. No. 35-7 at 9.)  Plaintiff again points to the fact that in December of 2007, Ms. Davis was Sales Manager, not Branch Manager, and supervised only two or three employees, while Stuart Boone was Branch Manager.  (Doc. No. 44 at 17.)  However, the Court notes that George Wilkerson, Plaintiff's former colleague, testified at his deposition that HD Supply gave Mr. Boone the position of Branch Manager only for a short period of time: "a month . . . or less than two I would think and then he was gone and Jami reassumed that position." (Doc. No. 45-7 at 2.)

　　　Ms. Davis stated at her deposition that she made the decision to retain Mr. Exum because he was versatile, because he had a commercial driver's license ("CDL"), was tow motor certified and would be a good fit with a small group of people.  In addition to the arguments discussed above about Ms. Davis not being in the position to choose who to lay off, Plaintiff also disputes that Mr. Exum's CDL was considered as a reason to keep him.  (Doc. No. 44 at 17 (citing Doc. No. 57-1 at ¶ 4).)  Mr. Exum stated in his Affidavit that he "was not told when [he] was put in Mr. Wilson's job position that [he] had been chosen to do this position because [he] had the ability to drive a commercial truck nor did anyone at any point [in] time request that [he] be available to drive a commercial truck."  (Doc. No. 57-1 at ¶ 4.)  Mr. Exum also stated: "I never had to drive a commercial truck in my position at the sales counter job with HD Supply.  In fact I never drove a truck for HD Supply, except for perhaps four (4) times during my first month of employment at HD Supply [in 2006]."  *Id.*  Plaintiff also points to evidence in the record that indicates that Mr. Woods, Plaintiff's immediate supervisor, believed Plaintiff to be a good employee, and Mr. Exum not to be a good employee, and that Mr. Woods would have chosen to keep Plaintiff over Mr. Exum.  (Doc. No. 44 at 18 (citing Doc. No. 45-4 at 4, 8-10, 14-16).)

Defendants argue that Mr. Exum was retained because he had been cross-trained on the CSA position, so he was able to perform that job function as well as his duties on the will call counter. They also claim that because Mr. Exum had a CDL, he could drive trucks as a backup driver, and because he was tow-motor certified, he could perform warehouse and will call functions. They also state that Ms. Davis and Mr. Bullington considered Mr. Exum to be an outstanding worker who always did what was asked of him and who went "above and beyond" to ensure that customers were satisfied. (Doc. No. 44 at 19-21.) Plaintiff disputes these facts; he notes, as above, that Mr. Exum was "cross-trained" on the CSA position because Ms. Davis had Plaintiff train Mr. Exum with an eye towards replacing Plaintiff even before the company decided to lay off employees; that Mr. Exum, as discussed above, was never questioned about his CDL or asked to drive a commercial truck in his position at the sales counter; and that Mr. Woods did not think Mr. Exum was a good employee and would have chosen to keep Plaintiff rather than Mr. Exum. *Id.* The Court also notes that Jeremy Yates, one of Plaintiff's colleagues at HD Supply, stated at his deposition that Plaintiff had to pull orders from will call, and that he never saw Plaintiff have any problems pulling those orders. (Doc. No. 45-6 at 7.) Mr. Yates also stated that when Mr. Exum took over CSA duties from Plaintiff, he performed the same job duties that Plaintiff did. *Id.* at 8. Mr. Woods stated that "[t]he only time Mr. Wilson couldn't pull the orders [from will call] was if he was like me down in his back." (Doc. No. 45-4 at 10.)

Ms. Davis retained Mr. Woods to work the counter because he was the counter supervisor and had knowledge of both HVAC and plumbing. Defendants state that Ms. Davis chose not to retain Plaintiff because he was less versatile than Mr. Exum: "he could not perform all of the will call functions, he did not have a CDL and was not certified through HD Supply to drive trucks, he

-13-

was not tow motor certified, and he had a negative attitude." (Doc. No. 44 at 22.) Plaintiff denies this for the reasons detailed above.

Defendants state that because they were keeping Mr. Woods to work the counter, they did not need to keep another CSA. (Doc. No. 44 at 26.) Plaintiff denies this, and states that Defendants moved Mr. Exum to the counter position and that Ms. Davis approached Mr. Exum before layoffs were contemplated or announced and indicated that she wanted him to assume Plaintiff's duties as CSA. Plaintiff points to the testimony of Mr. Woods, Mr. Yates, and Mr. Bullington at their depositions, where they testified that Defendants put Mr. Exum into Plaintiff's old position, that Mr. Yates saw Mr. Exum assume Plaintiff's old job duties after Plaintiff was laid off (and did not see Mr. Exum do anything that Plaintiff had not done), and that Mr. Exum was doing the same type of job duties that Plaintiff had done. (Doc. No. 44 at 26 (citing Doc. Nos. 45-4 at 8, 45-6 at 8, and 45-8 at 6).) Mr. Exum's affidavit also indicates that Plaintiff trained Mr. Exum for the CSA position, which he assumed after Plaintiff was laid off. (Doc. No. 57-1 at ¶¶ 2-3.)

On December 6, 2007, HD Supply issued Plaintiff a notification informing him that his position would be eliminated. The notification further states that Plaintiff would continue to receive pay and health and welfare benefits for two months after his last day of work. The Notification also stated:

> We encourage you to consider pursuing other career opportunities within HD Supply, should you so desire. If you are interested in available positions within HD Supply, you must apply through the posting process online at http://www.hdsupply.com/careers/default.asp.

Sometime around the first week of January, Plaintiff learned from Mr. Woods that his termination

date was being changed from March 11, 2008 to January 11, 2008. (Doc. No. 35-2 at 17.[3])

Plaintiff's last day of work was January 11, 2008. Defendant contends that after Plaintiff laid off, Mr. Exum was retained on the will call counter and Mr. Woods in the Counter Sales position, and that Plaintiff's plumbing counter duties were divided between both Mr. Exum and Mr. Woods. (Doc. No. 44 at 28-29.) Plaintiff disputes this, and claims that Mr. Exum replaced him (as described above).

Mr. Exum later left HD Supply to take a higher paying job. In April of 2008, Plaintiff stopped by the Nashville Branch of HD Supply and found out that Mr. Exum had left. Plaintiff expressed an interest in coming back to do his old job since Mr. Exum was gone. Ms. Davis told Plaintiff that she was not sure if corporate would fill the job; she told Plaintiff she would let him know if they were going to fill this position. She did not tell Plaintiff he needed to apply online. When Mr. Exum turned in his notice, the decision was made by Defendants that they needed to fill the position. (Doc. No. 45-5 at 7-8, Doc. No. 35-3 at 26.) The position was requisitioned, and many people applied for the job. All of the applicants applied online.

Plaintiff disputes any inference that HD Supply did not hire unless there was an online application, pointing to Mr. Exum's promotion into his old position, and then being told, after the promotion, that protocol needed to be followed and he needed to apply online. (Doc. No. 44 at 32 (citing Doc. No. 57-1 at ¶¶ 5-6).)

Plaintiff subsequently waited several weeks and then submitted an application online on April 23, 2008. HD Supply had already hired Keith Gober for the position on April 21, 2008. Defendants claim that Mr. Gober was hired by Mr. Bullington on behalf of Defendants based on his

---

[3] To the extent that this contradicts Plaintiff's Affidavit (Doc. No. 45-1 at ¶ 15), Plaintiff's Affidavit is stricken

attitude, experience, and abilities, including the fact that he had a CDL and was tow motor certified. (Doc. No. 44 at 34.)  Plaintiff disputes this, claiming that after Mr. Exum quit, Ms. Davis asked Mr. Woods who he thought she should hire into the CSA position.  Mr. Woods told her HD Supply should re-hire Plaintiff.  Ms. Davis told Mr. Woods that would never happen.  *Id.* (citing Doc. No. 45-4 at 18).

On September 12, 2008, the Nashville HD Supply branch closed and the remaining employees were separated from employment with HD Supply.

## II.     STANDARD OF REVIEW

Summary judgment is rendered when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must demonstrate that the non-moving party has failed to establish a necessary element of that party's claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment will be granted if "the evidence is so one-sided that one party must prevail as a matter of law."  *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, 93 F.3d 230, 233 (6th Cir. 1996).  The movant has the initial burden of informing the district court of the basis of the summary judgment motion and identifying portions of the record which lack a genuine issue of material fact to support the non-movant's case.  *See Celotex*, 477 U.S. at 323.

The non-moving party may not rest solely on the allegations in the complaint, but must delineate specific evidence that shows there is a genuine issue for trial.  *See id.* at 324.  A "mere possibility" of a factual dispute is not sufficient to withstand a properly supported motion for

---

as directly contradictory of his earlier deposition testimony.

summary judgment. *Baird v. NHP Mill Creek Apartments*, 94 F. App'x 328, 330-31 (6th Cir. 2004) (quoting *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). The non-moving party must show more than "some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Furthermore, a dispute about a material fact is genuine if a reasonable factfinder could find for the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

All reasonable inferences are to be drawn in favor of the non-moving party and the evidence of the non-movant is to be believed. *Id.* at 254. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . on a motion for summary judgment." *Id.* If the court determines that a reasonable factfinder could not find for the non-moving party, summary judgment must be granted. *See Matsushita*, 475 U.S. at 249-50.

## III. DISCUSSION

### A. Termination

Defendants claim that Plaintiff's claim of termination due to age discrimination fails because Plaintiff cannot establish his prima facie case, because the same-actor inference precludes a finding of age discrimination, because HD Supply selected Plaintiff for the layoff for a legitimate, nondiscriminatory reason, and because Plaintiff cannot show pretext. The Court will address each of these contentions in turn.

In order to state a prima facie case of age discrimination, a plaintiff must establish the following elements: (1) that he was a member of a protected class; (2) that he was discharged or suffered an adverse employment action; (3) that he was qualified for the position in question; and

(4) that he was replaced by someone outside the protected class.  *See Geiger v. Tower Automotive*, 579 F.3d 614, 623 (6th Cir. 2009).  If the termination arises as part of a work force reduction, the Sixth Circuit has modified the fourth element to require the plaintiff to provide "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons."  *Id.* (citing *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990)).

A reduction in force situation occurs when a position is eliminated and the employee whose position is eliminated is not replaced.  *See Barnes*, 896 F.2d at 1465.  An employee is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.  *Id.*

Defendants argue that Plaintiff conceded in his deposition that both Mr. Woods (who is in his 60s and is older than Plaintiff) and Mr. Exum (who is younger than Plaintiff) both assumed the plumbing counter sales duties that Plaintiff had performed as a CSA.  (Doc. No. 33 at 8 (citing Doc. No. 35-2 at 19, 24).)  Defendants contend that Mr. Exum also "continued performing will call duties" in addition to working the plumbing counter, and "drove delivery trucks approximately one to two times per week."  (Doc. No. 33 at 8 (citing Doc. Nos. 35-4 at 8, 35-3 at 21-22).)  They claim that these facts establish that Plaintiff was not replaced, and must therefore meet the heightened burden of production of additional evidence to indicate he was impermissibly discharged because of his age.  (Doc. No. 33 at 8-9.)

Plaintiff argues in response that "there is ample evidence Plaintiff was singled out for termination before the decision was made to undergo a reduction in force."  (Doc. No. 45 at 10.)  He

points to the conversation Ms. Davis had with Mr. Exum in the fall of 2007, according to Mr. Exum's affidavit, indicating that Ms. Davis wanted Mr. Exum to take over Plaintiff's position as CSA. *Id.* Plaintiff also claims that the testimony of Mr. Exum at least creates a genuine dispute of material fact as to whether Plaintiff was replaced by Mr. Exum: he points to Mr. Exum's affidavit (indicating that Ms. Davis told Mr. Exum he would be replacing Plaintiff), Mr. Exum's testimony indicating that he performed the same job duties he had seen Plaintiff do and that Plaintiff had trained him to do, Mr. Woods's testimony that HD Supply put Mr. Exum in Plaintiff's position, Mr. Yates's testimony that he saw Mr. Exum perform Plaintiff's job duties after Plaintiff was terminated and that they were the same duties, and Mr. Bullington's testimony that he saw Mr. Exum doing the same type of job duties that Plaintiff had done. *Id.* at 11. Plaintiff argues that Defendants' contention that the duties were different because Mr. Exum had to drive a truck and was tow motor certified should not be credited, given Mr. Exum's testimony that he never had to drive a truck while he worked the counter. *Id.* at 12.

While this is a close decision, the Court is obliged to draw all reasonable inferences in favor of Plaintiff. Plaintiff has pointed to evidence in the record indicating that the duties he performed as CSA were assumed by Mr. Exum; it cannot therefore be said to be undisputed that Plaintiff was not replaced by Mr. Exum, or that Plaintiff's duties were undisputedly divided up between Mr. Exum and Mr. Woods. The Court therefore finds that Plaintiff has introduced sufficient evidence to raise a genuine dispute of material fact as to whether Mr. Exum replaced Plaintiff as a CSA, and therefore as to whether Plaintiff's termination was the result of a reduction in force situation such that Plaintiff must introduce additional evidence per the modified fourth element of his prima facie case.

Defendants premise the rest of their argument upon the notion that Plaintiff must satisfy the modified fourth element in order to make out his prima facie case. (Doc. No. 33 at 8-12.) They do not appear to dispute that Plaintiff is a member of a protected class, qualified for the position he held, who suffered an adverse employment action (*i.e.*, his termination). The Court has already found that Plaintiff has introduced sufficient evidence to create a genuine dispute of material fact as to whether Plaintiff was replaced by someone outside the protected class (*i.e.*, Mr. Exum). Accordingly, the Court disagrees that Plaintiff has not put forth sufficient evidence to create a genuine dispute of material fact as to his prima facie case.

Defendants next argue that the same-actor inference precludes a finding of discrimination. (Doc. No. 33 at 12.) This inference allows courts to apply the theory that an individual with a bias against a protected class is unlikely to hire a member of the protected class only to later terminate that person based on a discriminatory basis. *See Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 801 (6th Cir. 2007) ("Where the same person hires the employee and fires him within a short period of time, especially where the employee's class has not changed, there is a strong contrary inference of discriminatory intent") (citing *Buhrmaster v. Overnite Transp. Co.*, 61. F.3d 461, 463-64 (6th Cir. 1995)). Defendants argue that Ms. Davis was responsible for hiring Plaintiff and for selecting him for the layoff, and that it "defies credulity to suggest that Ms. Davis developed a bias against individuals over age 40 in the approximately two years that followed Plaintiff's hire date." (Doc. No. 33 at 12.)

Plaintiff first argues that Ms. Davis was not the party responsible for his termination, as she told him that she had no input into the decision as to who would be laid off and who would not, and that she (as sales manager) at the time of the layoff decision was not Plaintiff's supervisor and did

not have the ability to hire, fire, or discipline Plaintiff. (Doc. No. 45 at 13-14.) Plaintiff argues in the alternative, however, that even if the same-actor inference did apply, that is not a reason that warrants granting summary judgment. *Id.* at 14. Plaintiff cites in support of this proposition *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 573-74 (6th Cir. 2003) where the Sixth Circuit "examined the weight to be given [the] same[-]actor inference and while noting some circuits found this evidence to be 'quite persuasive' the better practice is to minimize its importance[.]" (Doc. No. 45 at 14.) The court in *Wexler* stated:

> [T]he idea that a mandatory inference must be applied in favor of a summary-judgment movant whenever the claimant has been hired and fired by the same individual . . . strikes us as being contrary to the Supreme Court's opinion in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Although the factfinder is permitted to draw this inference, it is by no means a mandatory one, and it may be weakened by other evidence. . . . We therefore specifically hold that where, as in this case, the factfinder decides to draw the same-actor inference, it is insufficient to warrant summary judgment for the defendant if the employee has otherwise raised a genuine issue of material fact.

317 F.3d at 573-74. Accordingly, the Court declines to grant summary judgment to Defendants on the grounds that Ms. Davis both hired and terminated Plaintiff and therefore that she lacked sufficient discriminatory animus, per the same-actor inference. The Court also notes that while Defendants claim that it is undisputed that HD Supply asked Ms. Davis to make the decision as to which employees to lay off (Doc. No. 48 at 3 n.3), Ms. Davis's deposition testimony states that the decision as to which employees would be laid off was shared "50/50" between Ms. Beebe and herself, and Ms. Beebe testified at her deposition that Ms. Davis and Mr. Bullington made the decision as to which employees would be terminated.

Defendants next argue that HD Supply selected Plaintiff for the layoff for a legitimate non-discriminatory reason.  (Doc. No. 33 at 12.)  They argue that the reason was many-fold: Ms. Davis chose to keep Mr. Woods, the Counter Supervisor, on the counter as he had knowledge of both plumbing supplies and the remaining HVAC supplies; because Mr. Woods was being retained on the plumbing counter, they argue, there was no need to retain Plaintiff.  *Id.*  Second, Ms. Davis chose to retain Mr. Exum to work the will call counter; because Mr. Exum had been trained on the plumbing counter (by Plaintiff), Mr. Exum could also work the plumbing counter.  Mr. Exum could also perform other functions, such as driving delivery trucks or working in the warehouse, while Plaintiff could not perform any functions other than working the plumbing counter—this rendered Mr. Exum more versatile and multi-functional than Plaintiff.  *Id.*  Finally, Ms. Davis "found that Mr. Exum displayed a significantly more positive attitude than Plaintiff did, and was more of a 'team player' than Plaintiff."  *Id.*  This was important because HD Supply would be reducing its workforce and any remaining employees needed to be able to get along well with others.  Therefore, Defendant argues, HD supply had three legitimate non-discriminatory reasons for selecting Plaintiff to be laid off.  *Id.*

Plaintiff argues that "[r]egardless of whether Mr. Woods was retained at the plumbing counter, there is ample evidence . . . that Mr. Exum replaced Plaintiff . . . ." (Doc. No. 45 at 15.) Plaintiff notes that while Defendants claim Mr. Exum was retained because of his ability to drive delivery trucks, he was never asked to drive commercial trucks while working at the counter; similarly, while Defendants claim Mr. Exum was retained because of his experience on will call, Plaintiff also performed will call duties while a CSA as the need arose.  *Id.* at 16.

Plaintiff relatedly argues that any alleged legitimate non-discriminatory reasons for selecting

Plaintiff to be laid off are in fact pretextual.  *Id.* at 18-21.  A plaintiff can show pretext in three interrelated ways: by showing that (1) the proffered reason has no basis in fact; (2) the proffered reason did not actually motivate the employer's action; or (3) was insufficient to motivate the employer's action.  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009).  In *Imwalle v. Reliance Medical Products, Inc.*, the Sixth Circuit stated:

> In *Reeves* [*v. Sanderson Plumbing Products*, 530 U.S. 133, 14 (2000)], the Supreme Court explained that "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive.  *See* [*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 517 (1993)] ('[P]roving the employer's reason false becomes part of (and often considerably assists) the greater enterprise of proving that the real reason was intentional discrimination') . . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."  *Reeves*, 530 U.S. at 147-48.

515 F.3d 531, 545 (6th Cir. 2008).

Plaintiff raises a number of issues in order to establish a genuine dispute of material fact as to whether Defendants' claimed reasons for terminating him were pretextual.  (Doc. No. 45 at 19-21.)

Defendants argue that Plaintiff's apparent belief that "he should not have been selected for the layoff because he was more knowledgeable than Mr. Exum on the counter" is "inapposite—HD Supply made the decision to keep fewer employees who could perform multiple functions, and Plaintiff did not fall into that category."  (Doc. No. 33 at 14.)  They state that "Plaintiff cannot show that HD Supply's legitimate, non-discriminatory reasons for selecting him for the layoff—because Mr. Woods was retained on the counter, because Plaintiff could only perform one function and because Plaintiff had a negative attitude—are pretextual."  *Id.* at 15.

Arguably, Plaintiff has produced sufficient evidence to raise a genuine dispute of material fact that Defendants' second alleged reason (*i.e.*, that Mr. Exum could perform more functions than Plaintiff could) was pretextual. Defendants argue that Mr. Exum was more versatile because of his ability to work will call and to drive delivery trucks. However, in light of evidence that Plaintiff had the general ability to work will call (with the possible exception of personally dealing with will call items over 25 pounds) and that Defendant never asked Mr. Exum to drive any trucks (and nor did Mr. Exum in fact drive any such trucks) while he worked the plumbing counter, the Court is disinclined to state as a matter of law that no reasonable finder of fact could find this stated reason to be pretextual.

However, this Court is not aware of any evidence raised by Plaintiff that would allow a reasonable finder of fact to find that Defendants' other two reasons—namely, that Mr. Woods was retained on the counter, and that Plaintiff had a negative attitude—either (1) had no basis in fact, (2) did not actually motivate Defendants' actions, or (3) were insufficient to motivate Defendants' actions. The Court here notes as well that while rejection of an employer's stated reasons, when coupled with a plaintiff's prima facie case, can allow a fact-finder to conclude that the real reason was intentional discrimination, plaintiff's burden remains that of producing "sufficient evidence from which the jury could reasonably reject the defendants' explanation *and infer that the defendants intentionally discriminated against him.*" *Imwalle*, 515 F.3d at 545 (internal citations omitted) (emphasis added). Put differently, "at bottom the question is always whether the employer made up its stated reason *to conceal intentional discrimination. See* [*St. Mary's*, 509 U.S. at 515] ('[A] reason cannot be proved to be "a pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason) . . . ." *Chen*, 580 F.3d at 400 n.4

(emphasis added). The Court notes from its review of the evidence that Plaintiff has not put forth any evidence of age discrimination beyond his prima facie case (*i.e.*, that he was replaced by a younger person) and his contention that Defendants' stated reasons for his termination are pretextual. From the Court's reading of the evidence, the most likely explanation in this case is that Ms. Davis terminated Plaintiff rather than others during the layoff at least in part because of some animus she bore him; however, Plaintiff has put forth no evidence even to suggest that this animus was based on his age rather than some other personal characteristic.

The Court finds that summary judgment is proper in this case on Plaintiff's termination because he has not put forth sufficient evidence that would allow a jury to find pretext in Defendants' proffered explanations that Mr. Woods was retained to work the counter (rendering Plaintiff unnecessary) and that Ms. Davis perceived Mr. Exum to have a better attitude than Plaintiff. Accordingly, the Court therefore **GRANTS** Defendants' Motion as to Plaintiff's age discrimination claim premised on his termination.

> B.    *Failure to Hire*

Defendants argue that Plaintiff's claim of age discrimination premised upon Defendants' failure to re-hire him "is disingenuous at best." (Doc. No. 33 at 15.) Defendants argue that it is undisputed that Mr. Gober was hired for Mr. Exum's available position two days before Plaintiff submitted his online application, and Ms. Davis was not under any duty to notify Plaintiff of the online job posting because of a statement that she would "let him know" if the position were so posted. *Id.* at 15-16. Defendants argue that Plaintiff testified at his deposition that he knew he would have to apply online for any position: "Indeed, Plaintiff demonstrated his acute awareness of the fact that all applications must be submitted online, because that is precisely what he did." *Id.* at

16.

Defendant also argues that "Plaintiff also alludes to an inside sales position at HD Supply

Waterworks (a facility separate from the Nashville Plumbing/HVAC branch that he applied for in

2008. That position was never filled by anyone, thus . . . cannot form the basis of any failure to hire

claim[,]" citing a declaration executed by James Mott. *Id.* at 17 n.6 (citing Doc. No. 35-1 at ¶ 8).

Plaintiff does not adequately respond to Defendants' argument regarding the failure-to-hire

claim relating to the inside sales position at HD Supply Waterworks. The Court accordingly

**GRANTS** Defendants' Motion with regard to this claim.

Plaintiff's primary argument in opposition to Defendants' Motion as to his failure-to-hire

claim based on Mr. Exum's open position is that "[o]nline applications were not required." (Doc.

No. 45 at 21.) He claims that Mr. Exum was "promoted" into Plaintiff's position and then told

afterwards to "follow protocol" and apply online. *Id.* Plaintiff argues: "Hence, Ms. Davis did have

the ability to hire Plaintiff regardless of whether he applied on-line because she hired a 34 year old

and then requested that he apply on-line for the position." *Id.*

Even if Mr. Exum was subsequently required to apply online for Plaintiff's old position, the

undisputed facts establish (as Defendants note (Doc. No. 48 at 5)) that Mr. Exum did in fact apply

online for the position. Regardless of what Ms. Davis indicated to Plaintiff when he learned about

Mr. Exum's departure, the evidence clearly establishes that applicants were required to apply

online, as Plaintiff admitted in his deposition (Doc. No. 35-2 at 29); no reasonable fact-finder could

find that Ms. Davis somehow created an exception to this policy by offering to "let [Plaintiff]

know" if Defendants wanted to fill Mr. Exum's position. No reasonable finder of fact, accordingly,

could find that this stated reason for Defendants' failure to re-hire Plaintiff (*i.e.*, that he did not

apply online for the position until after it was filled) was pretextual.  The Court therefore **GRANTS** Defendants' Motion as to Plaintiff's second failure-to-hire claim.

**IV.     CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has not produced sufficient evidence to demonstrate a genuine dispute of material fact regarding his discrimination claim.  Accordingly, Defendant's Motion for Summary Judgment is **GRANTED**.

It is so ORDERED.

Entered this____13th_____day of April, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT